WELSCH v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

**Railroad:** DANGEROUS CROSSING : EMPLOYMENT OF FLAGMAN : NEGLIGENCE. Railroad companies are not bound to station flagmen at the crossing of public highways, no matter how dangerous. If the bell is rung, or the whistle sounded, as the train approaches the crossing, in compliance with section 806, Revised Statutes, a company fulfills its whole duty, except, perhaps, in a case where the crossing is of such a character that the employment of a flagman is one of the common and usual means of warning adopted by prudent railroad companies. In such case the omission to employ one might be negligence.

*Appeal from Marion Circuit Court.*—HON. JOHN T. REDD, Judge.

REVERSED.

*Geo. W. Easley* for appellant.

*Anderson & Boulware* for respondent.

NORTON, J.—This is a suit for damages to plaintiff's horses and wagon, alleged to have been sustained at a crossing of a public highway in Marion county, by reason of defendant's negligence. The negligence averred was: 1. In not having a flagman or watchman at the crossing; 2. In not sounding the whistle or ringing the bell as required by statute; 3. That the servants and agents of defendant in charge of said train, so carelessly and negligently propelled the same, and made such great noise and shrieks by blowing the steam whistle attached to the locomotive, that the horses were frightened and ran away, etc. The answer was a general denial. On the trial plaintiff obtained judgment for $350, from which defendant has appealed.

The evidence tended to show that where the Palmyra and Lagrange road crossed the railroad, near the highway bridge across North river, the highway is cut out of the side of the rock bluff, gradually descending from the top of the hill, which is twenty-five or thirty feet high, till about twenty feet from the railroad, where it reaches the level of the railroad and crosses it at grade, that this road cut out of the side of the rock bluff, was " very rugged and uneven," and wagons going along there make a great deal of noise; that from the top of the hill, nor down to the level of the railroad, in fifteen or twenty feet of the track, a train could not be seen; that plaintiff, about half past ten o'clock in the day, knowing that a passenger train was due at that hour, stopped, looked and listened for a train, but neither seeing one nor hearing the customary signals of an approaching train, drove his wagon and team forward and discovered a train about fifty yards from him as his horses stepped on the crossing; that plaintiff got across the track, and his horses becoming frightened by the sharp sounding of the whistle ran off and fell over the bluff of the river, killing themselves and destroying the wagon and harness; that from the location of the road, the intervention of the

bluff and the noise made by the wagon, it was difficult to hear either bell or whistle. The evidence was conflicting as to whether either the bell was rung or whistle sounded. The evidence also tended to show that the defendant had kept a watchman or flagman at the said crossing up to within about eighteen months before the injury complained of occurred, and that plaintiff knew that for that length of time there had been no watchman at the crossing. Upon this state of facts the court gave, over defendant's objection, the following instruction :

If the jury find from the evidence that the public highway running north from the city of Palmyra, from a point some two or three hundred yards before it reaches the point where it is crossed by the railroad, to within a few feet of the south end of the bridge across North river, is constructed by cutting into the side of the bluff, leaving the bed of the highway uneven and rocky, and if the jury further find that persons traveling on said highway, going north toward said crossing and bridge, in wagons or other vehicles, by reason of the noise made by such vehicle, and the intervention of the bluff between the point on said highway at which said vehicle was descending said bluff, and the train approaching said crossing from the east, could not ordinarily hear the whistle or bell and could not see said train, and if the jury find that by reason of the above facts said crossing was unusually dangerous to the safety of travelers and their teams approaching said crossing from the direction of Palmyra, it was the duty of defendant to station at said crossing some watchman or other agent to warn such travelers so approaching said crossing of the approach of trains coming from the east, or to adopt some other means by which the crossing of their road at said point by such travelers would be rendered reasonably safe ; and if the jury further find that defendant, its employees and agents, neglected to station a watchman or other agent at said point to warn travelers, and neglected to adopt any other means to render this crossing of their road at said

point by such travelers reasonably safe, and if the jury further find that the injury to plaintiff's wagon and horses was caused by such negligence of defendant or its employees or agents, the verdict should be for plaintiff.

This instruction in effect tells the jury, as a matter of law, that it was the duty of the defendant to station a watchman at the crossing if they believed that such crossing was unusually dangerous to the safety of travelers, and that its failure to do so rendered it liable for injuries occasioned thereby. Section 806, Revised Statutes, enjoins it as a duty on every railroad either to ring a bell or sound a whistle at least eighty rods from the place where such railroad shall cross any traveled public road. The above instruction adds another and additional duty to those imposed by the statute, and that this cannot be done has been expressly held in New York, where there is a statute of which the above section is a literal copy and from which it was borrowed.

In the case of *Beisiegel v. New York Central R. R. Co.*, 40 N. Y. 9, it is said: "The question is fairly presented whether a railroad company is required by law to station a flagman at every street or road crossing, where in the opinion of a jury the travel is such that ordinary prudence requires it, for the purpose of warning and keeping travelers off from such crossing when trains are passing over it." In the disposition of this question it was observed that " railroads are authorized by statute to construct their roads and run their trains across streets and highways. The same statute provides that they shall give certain signals for the purpose of warning travelers of their approach and presence; such signals being in the judgment of the legislature sufficient to protect the public from injury in the use of crossings. Keeping a flagman at the crossing or any of them, is not required by statute; nor does the statute require the company to give warning to travelers other than as therein required. The question remains whether the common law requires the company to warn travelers of approaching trains by other and more effective

means than the statute requires. The claim that it does, is based upon the maxim that every one must so use his own as not to injure another. In applying the maxim it must be borne in mind that the traveler and the railroad has each an equal right of way in the crossings, derived from the same authority; the former for the purpose of travel, and the latter for running its trains. A collision is somewhat dangerous to the trains, but vastly more so to the traveler. The law imposes upon both the duty of observing care to avoid them. But the care imposed upon the company is in operating its trains, in so transacting its business in the exercise of its right of way, as not to injure others in the exercise of their similar right, provided the latter exercise due care on their part. This relates to the mode of operating the trains and all other things done by the company in the transaction of its business. It does not require the company to employ men to keep travelers off the track, or to serve notices upon them that trains are approaching. Should the company do this it would relieve the traveler from all necessity of exercising care in this respect, and it would, indeed, be safe for him to go upon the track, having received no express warning. If the exertions of the flagmen were in any particular case inadequate to prevent injury to a traveler, upon the same principle it might be submitted to a jury whether ordinary prudence did not require gates to be closed at certain crossings, while trains were passing, or something else done to protect the traveler, and if in their judgment it did, to instruct them that such omission was negligence."

So in the case of *Weber v. New York Central R. R. Co.*, 58 N. Y. 459, where the same question was considered, it was held that "the duty of posting flagmen or having servants and agents, or placing gates or other obstructions, or of giving special or personal notice to travelers at railway crossings, can only be imposed by the legislature."

If there had been evidence in this case tending to show that at such a crossing as the one where the injury occurred,

the employment of a flagman was one of the common and usual means of warning adopted by prudent railroad companies, then the omission to have employed one might have been negligence, and had that question, with evidence upon which to base it, been submitted to the jury, as it was in the case of *Kinney v. Crocker*, 18 Wis. 74, under the authority of that case it might have been justified. Judgment reversed and cause remanded. All concur.