JANE ENGLISH ET AL., RESPONDENTS, *v.* SOUTHERN PACIFIC COMPANY ET AL., APPELLANTS.

13    407
18    330

RAILROAD COMPANIES—ACCIDENT AT CROSSING—QUESTION FOR JURY —DAMAGES—EVIDENCE.

1. Notwithstanding the statutes of Utah provide that railroad companies crossing streets and thoroughfares shall ring the locomotive bell and sound the whistle, yet this statute will not relieve the railroad company from the charge of negligence in failing to adopt such other reasonable measures for public safety as common prudence may dictate, considering the danger, locality, travel, and surrounding circumstances. The rule is founded in common law that every one must so conduct and use his own property that, under ordinary circumstances, he will not injure another if the injury can be avoided by the use of reasonable care.

2. The vigilance and care to be used at public crossings in populous cities where many tracks are built and used across a public thoroughfare, and the crossing is in nearly constant use, are greater than at ordinary road crossings in country places or small and less populous localities; and the care to be used must depend upon the facts. And in crossing a thickly populated street, which is almost constantly in use

in a large city, where traveling across it is dangerous, reasonable care and prudence on the part of the railroad company require it to provide at such crossing flagmen or gates during the time the tracks are in use, so as to lessen the danger caused by the almost constant use of the tracks in operating and switching trains across the street; but this care need not be observed in country districts or smaller localities, where but few pass each day, and the probable danger is thereby much lessened.

3. Testimony showing the danger of the crossing and its locality and use in populous localities, was proper to be submitted to the jury as bearing upon the question of negligence of the company in not providing flagmen or gates at such crossing to protect travelers, under guarded instruction from the court.

4. Where the widow of deceased was called as a witness, it was competent for her to state the names and ages of the children of the deceased; and especially so as they were all parties to the action.

5. In an action for damages in causing death by negligence, the law allows nothing more than the pecuniary loss, as shown by the proof, and measured by pecuniary standard. The extent of the loss should not be measured by the wealth or poverty of the recipient or giver, but by his earnings, care, health, beneficent and pecuniary contributions given or in reasonable expectation of being given, to the widow and children, as shown by the proof, and judged from all the circumstances of the case to be just, but measured by a pecuniary standard.

6. Where the deceased was 38 years old, in good health, and earning $50 per month, which he contributed to the support of his wife and 7 children, the eldest being 17 years of age, and it appears that his expectancy of life was 29 years, *held* that, under the rule of law, $15,000 or $13,000 damages were excessive, and that the damages should be reduced to $10,000, and judgment modified accordingly; this action being brought, and appeal taken, before the state was admitted into the union.

(No. 665. Decided May 27. 1896. 45 P. R. 47.)

Appeal from the district court of the Fourth judicial district, Territory of Utah. Hon H. W. Smith, *Judge.*

Action by Jane English and others against the Southern Pacific Railway Company and the Ogden Union Railway & Depot Company, for damages sustained by the plaintiff by reason of the death of her husband, caused by a passenger train. From a judgment for the plaintiffs, defendants appeal. Modified as to the amount of damages.

*Marshall & Royle* and *Parley L. Williams,* for appellants.

When a view of the track is obstructed, the traveler must use increased diligence, and if he ventures upon a track from which his view has been obstructed, without first seeking to ascertain the facts, he does so at his peril. *Griffiin* v. *Chicago, etc., R. Co.,* 68 Iowa 635; *Seefeld* v. *Chicago, etc., R. Co.,* 70 Wis. 278; *Chicago, etc., R. Co.* v. *Crisman,* 19 Colo. 30; *Chicago, etc., R. Co.* v. *Fisher,* 49 Kans. 460; *Tucker* v. *Duncan,* 9 Fed. Rep. 867; *Mackey* v. *N. Y. Central Railroad,* 27 Barb. 529, 542; *Pennsylvania Co.* v. *Morel,* 40 O. St. 338; *Atchison, etc., R. Co.* v. *Townsend,* 39 Kans. 115; *Pennsylvania Co.* v. *Frana,* 112 Ill. 398; *McBride* v. *Northern Pac. R. Co.,* 19 Oregon 64; *Darbin* v. *Oregon R. & N. Co.,* 17 Oregon 5; *Clark* v. *Northern Pacific R. Co.,* 47 Minn. 380; *Pennsylvania R. Co.* v. *Beale,* 73 Pa. St. 504; *Hickson* v. *St. L., etc., R. Co.,* 80 Mo. 335; *Kelly* v. *Chicago, etc., R. Co.,* 88 Mo. 534; *Whalen* v. *N. Y., etc., R. Co.,* 58 Hun. 431; *Abbott* v. *Dwinell,* 74 Wis. 514; *Gothard* v. *Alabama, etc., R. Co.,* 67 Ala. 114; *B. & O. R. Co.* v. *Hobbs,* (Md.) 19 Am. & Eng. R. Cas. 337; *Brady* v. *Tol. etc., R. Co.,* 81 Mich. 616.

A traveler at a railroad crossing whose view of a railroad track is temporarily obscured by smoke or by a passing train, or by other temporary causes, is in duty

bound to stop and wait until the obstruction to his view is removed, before crossing the track into a position of peril, and if he heedlessly pass forward into collision with an approaching train, he is chargeable with contributory negligence. *Foran* v. *N. Y., etc., Co.,* 64 Hun. 510; *Chicago, etc., R. R. Co.* v. *Crisman,* 19 Colo. 30; *Chicago, etc., R. Co.* v. *Fisher,* 49 Kans. 410; *Fletcher* v. *Fitchburgh R. Co.,* 149 Mass. 127; *Marty* v. *Chicago, etc., R. Co.,* 38 Minn. 108; *Hamm* v. *N. Y., etc., R. Co.,* 18 I. & S. 78; *Krause* v. *Pennsylvania, R. Co.,* 139 Pa. St. 272; *Fleming* v. *W. P. R. R. Co.,* 49 Cal. 257; *Schmidt* v. *Philadelphia, etc. R. Co.,* 149 Pa. St. 357; *Benson* v. *Chicago & N. W. R. Co.,* 41 Ill. App. 227; *Whalen* v. *N. Y., etc., R. Co.,* 61 Hun. 623.

The following cases also hold that it should not be charged as a rule of law, nor submitted to the jury to determine, that it is the duty of a railroad company to keep a flagman at a crossing, when not required by any statute, or municipal ordinance, or by self-imposed custom. *Erns* v. *Hudson River, etc., Co.,* 39 N. Y. 61; *Calahan* v. *N. Y., etc., R. R. Co.,* 60 N. Y. 136; *Dyer* v. *Erie Ry. Co.,* 71 N. Y. 231, 233; *Paralinsky* v. *N. Y., etc., R. R. Co.,* 82 N. Y. 427; *Houghkirk* v. *Press, etc., Co.,* 29 N. Y. 226, 227; *Cumming* v. *Brooklyn, etc., R. Co.,* 105 N. Y. 671, 672; *Semel* v. *N. Y., etc., R. R. Co.,* 9 Daly 321; *Buck* v. *Manhattan R. Co.,* 15 Daly 279-281; *Schwartz* v. *H. R. R. Co.,* 4 Robt. 347; *Southerland* v. *N. Y., etc., R. R. Co.,* 9 J. & S. 17-18; *Crawford* v. *Del., etc., R. Co.,* 23 J. & S. 50; *Coyle* v. *Long Island R. R. Co.,* 33 Hun. 37; *Case* v. *N. Y., etc., R. R. Co.,* 75 Hun. 528, 530; *Dyson* v. *N. Y., etc., R. R. Co.,* 57 Conn. 923; *Heddles* v. *Chicago, etc., R. R. Co.,* 74 Wis. 239, 256-7; *Winchell* v. *Abbott,* 77 Wis. 375-6; *Welsch* v. *Hannibal, etc., R. Co.,* 72 Mo. 451; *Penn. R. R. Co.* v. *Matthews,* 36 N. J. L. 534-536; *State* v. *R. R. Co.,* 47 Md. 85; *Stubley* v. *London & N. W. R. Co.*

L. R. 1 Ex. 13; *Cliff* v. *Midland Ry. Co.*, L. R. 5 Q. B. 257; *Pennsylvania R. R. Co.* v. *Matthews*, 36 N. J. L. 534-6; *Haas* v. *Grand Rapids & Ind.*, 47 Mich. 406; *Welsch* v. *Hannibal, etc., R. Co.*, 72 Mo. 451; *Cliff* v. *Midland Ry. Co.*, L. R. 52 B. 264-6; *Peoria, etc., Ry. Co.*, v. *Herman*, 39 Ill. App. 287; *Villance* v. *Boston, etc., R. Co.*, 39 Fed. 365; *R. R. Co.* v. *Ives*, 144 U. S. 408, 420-1; *Lapsley* v. *Union Pacific R. Co.*, 50 Fed. 177; *Railway Co.* v. *Schneider*, 45 O. St. 693-4.

Upon the question of proof of the compliance of the railroad company with the statutory signals, the following authorities establish the principle that where there is positive proof of numerous witnesses that the statutory signals were given the mere negative statement of witnesses who did not hear them does not raise a substantial conflict, and in such a case a verdict based upon the theory that they were not given is against the evidence. *Culphane* v. *N. Y., etc., R. R. Co.*, 60 N. Y. 134, 137; *Shufelt* v. *R. R. Co.*, 96 Mich. 334-5; *Durkee* v. *Pres. D. & H. R. Co.*, 34 N. Y. S. R. 978.

The jury in the case at bar rendered its verdict for the sum of $15,000.00, which verdict was on motion for a new trial reduced to the sum of $13,000.00, and, as we contend, is still far in excess of any damages, which under the law, could or should be allowed in this case; and which amount is far in excess of any judgment that has heretofore been rendered by the courts of Utah territory in the case of death.

If the court will refer to the Utah Reports, in the case of *Webb* v. *Rio Grand Western Ry. Co.*, or the case of *Seeley's Administratrix* v. *So. Pac. Co.*; or the case of *Poole* v. *So. Pac. Co.*, it will find that in no one of these cases has such a verdict been sustained or such a judgment suffered to stand.

*Railway Co.* v. *Eddy*, 42 Ark. 527: "As the elements of

damage in this class of cases are largely indeterminate, and admit of no exact standard of measurement, it is seldom that the court's duty to review a jury's award can be made to appear; but this difficulty does not excuse a performance of the duty whenever it is clearly discerned."

The following citations fully support the quotation above given: Wood's Mayne, Dam. p. 746, and cases; 3 Suth. Dam. 259; 3 Sedg. Dam. § 1319 et seq.; Gilbert v. Berkinshaw, Lofft. 771; Frothingham v. Express Co., 36 Fed. Rep. 252; Burdick v. Weeden, 9 R. I. 139; Wood v. Gunston, Style 466; Worster v. Proprietors, etc.; 16 Pick. 547; Railway Co. v. Dwyer, 36 Kan. 58; Goetz v. Amos, 22 Mo. 170; Swartzel v. Dey, 3 Can. 244; Clapp v. Railway Co., 19 Barb. 461; City v. Fisher, 53 Ill. 407; City v. Kelly, 69 Ill. 475.

Evans & Rogers and A. G. Horn, for respondents.

MINER, J.:

This action was brought to recover damages arising from the alleged negligence of the defendants, in causing the death of William English. Upon a trial the jury found a verdict for the plaintiffs in the sum of $15,000. Upon a motion for a new trial the verdict and judgment were reduced to $13,000.

It appears that on November 21, 1894, the defendants owned and controlled numerous railroad tracks crossing Twenty-fourth street, in the City of Ogden; that the depot and grounds of the companies consisted of 60 acres of land, at which point numerous railroad tracks center; that during nearly every hour of the day, and at times almost continually, the three different railroad companies were moving their trains upon the tracks across Twenty-fourth street, running north and south, to and from the depot. Twenty-fourth street is a well-

settled and much-traveled street, near the center part of
the city, consisting of about 15,000 people. Prior to the
date of the injury complained of, the defendants had
never stationed a flagman at the crossing to warn those
using the street of the approach of trains, which were
almost constantly passing and switching their trains and
cars across the street, and no gates were ever erected, or
other precautions used, to warn the numerous traveling
public of the danger, except the ringing of the bells, and
the blowing of the locomotive whistles, as the trains
passed over the crossing. At the time of the accident,
the Rio Grande Western Railroad Company were switch-
ing an engine and three cars from the ice-house switch,
going northward across Twenty-fourth street. While
doing so, the deceased, William English, was traveling
west, across Twenty-fourth street, with a horse and
express wagon. He stopped a few feet east of the Rio
Grande track and train, until it cleared the center of the
street, just north, where it remained close to the street.
At this time the Southern Pacific train, consisting of
seven cars, started about a mile north of Twenty-fourth
street, and pushed a train of seven cars towards Twenty-
fourth street. The Rio Grande train obstructed the view
of the deceased so far as the movements of the Southern
Pacific train were concerned. Without seeing the
Southern Pacific train, the deceased started to drive
across the track No. 1, in the rear of the hind car of the
Rio Grande train, standing on the track. As he crossed
track No. 1, and came upon track No. 2, nine feet to the
west of it, the Southern Pacific train backed up at the
rate of five or six miles per hour, and he was struck by
the rear end of the Southern Pacific train, and crushed
under the wheels of the cars. He died from such injuries
shortly thereafter. The accident occurred about 4 o'clock
in the afternoon of a clear day. Several witnesses tes-

tify that the Southern Pacific train bell was rung, and the whistles sounded many times; while other witnesses say they heard bells and whistles and other noises, but did not hear the Southern Pacific bell or whistle. When the deceased was taken from under the cars, he remarked that he did not see the train coming. Before the deceased reached track No. 2, he inquired of Mr. Couch, a switchman on the Rio Grande train, and said, "Can I cross now?" The switchman answered, "No; do not try to cross." Deceased drove on afterwards, and was injured. At this time, witness states that he did not see the Southern Pacific train, but had heard its whistle before. Witness further states, "I do not think English could see the Southern Pacific train from the wagon where he was. He was 30 or 40 feet from me. I could not say whether deceased heard me or not."

Another witness says that Couch hallooed to English as he went upon the track, but did not hear anything said. Testimony was also introduced tending to contradict the testimony of Couch. Page testifies that he was present and saw English come out from behind the Rio Grande cars, and when his horse was upon track No. 2, said to him, "For God's sake, Bill, what are you doing there?" English jerked up his horse, and let loose of the lines, as if to jump out. Could not say as English heard me. It was all done in a moment. At this time the rear car struck him." Deceased, at the time of his death, was 38 years old, of good health and habits, never used liquor or tobacco, and weighed 165 pounds. He was earning $50 per month, and contributed his earnings to the support of his family, consisting of a wife and 7 children, the oldest child being 17 years of age. He was shown to be a kind and affectionate husband and father. According to the American mortality table, it appears that his expectation of life was 29 62-100 years. His funeral expenses

amounted to $105. He was familiar with the street crossings and the conduct of the train.

The appellants contend that the deceased contributed to cause the injury and death complained of by his own negligence and want of ordinary care. It was the duty of the deceased to have looked and listened and to have done everything that a prudent man would do, before he attempted to cross the track at the place in question. This crossing was one in use by the several railroad companies every hour in the day in the arrival and departure of trains, and in switching cars across, to and from the depot, and from the several freight departments located near by. At the time in question, the wind was blowing hard, several bells were being rung and whistles sounded in different parts of the yard; and deceased's position behind the Rio Grande cars was such that it might not have been possible for him to see the train backing up, or to hear the bell from that locomotive. The crossing, as shown by the proof, was one more than ordinarily dangerous; and in order to cross over it at all, in the absence of a gate or flagman, one must wait until the trains are all out of the way, or run the risk of being injured by the many trains constantly backing up, and crossing and recrossing this locality. When crossing this net work of numerous railroad tracks, the utmost vigilance is not always sufficient to protect one from danger. If a traveler looks in one way to avoid danger, he frequently encounters it from a direction least expected. We think the question of contributory negligence on the part of the deceased was properly submitted to the jury.

Plaintiffs introduced evidence upon the subject of the negligence of the defendants in not providing a flagman or gates at this crossing, to prevent travelers crossing this track from being exposed to injury, and upon that subject the court instructed the jury as follows: "The

second matter of negligence that is alleged is a failure to provide a switchman or flagman at this crossing, or to provide gates which should be closed and opened, so as to prevent passengers upon the highway from being exposed to danger. The plaintiffs claim that under the facts and circumstances developed in this case, that this became a duty which the defendants owed to the traveling public. * * * The terms 'neglect,' 'negligence,' 'negligent,' 'negligently,' import a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns. Now, just simply apply that rule, gentlemen, to the facts in this case, and you can by that determine whether or not the defendants have been guilty of negligence in this matter. Did their conduct in operating this railroad track crossing this highway, under all the circumstances and facts that have been detailed in evidence, import a want of such attention to the nature and probable consequences of their acts as a prudent man ordinarily bestows in his own concern? If it does, if there was such a want, then there is negligence, and it constitutes a ground of complaint on behalf of any person who is injured by reason of it. As to what a prudent man would do under the circumstances, gentlemen, is for you to determine, and you are to determine it for yourselves." To the introduction of evidence upon that subject, and to the charge of the court thereon, the defendants assign error.

The statutes of Utah only impose upon railroad companies the duty of ringing the bells and sounding the whistles upon the approach of trains at public crossings, and the appellants contend that, if the defendants performed the statutory requirement before reaching the crossing, no additional duty was imposed under any circumstances, to prevent injury. This question is sur-

rounded with much difficulty and many conflicting decisions. In discusing it, we must remember that this crossing is over one of the main streets and avenues of travel in Ogden City, about three blocks from the business portion of the city, containing 15,000 people, and that the street is well settled; that farmers and the traveling public are almost constantly passing over the crossing. Numerous railroad tracks of the three railroad companies cross this street, and engines and cars are very frequently, and almost constantly, passing and being switched one way or the other over this street.

In the case of *Railway Co.* v. *Ives*, 144 U. S. 419, 12 Sup. Ct. 679, where this question was raised, the trial court charged the jury as follows: "So if you find that because of the special circumstances existing in this case, such as that this was a crossing in the city, much used, and necessarily frequently presenting a point of danger, where several tracks run side by side, and there is consequent noise and confusion and increased danger,—that owing to the near situation of houses, barns, fences, trees, bushes, or other natural obstructions, which afforded less than ordinary opportunity for observation of an approaching train, and other like circumstances of a special nature, it was reasonable that the railroad company should provide special safeguards to persons using the crossing in a cautious manner,—the law authorizes you to infer negligence on its part for any failure to adopt such safeguards' as would have given warning, although you have a statute in Michigan which undertakes, by its provisions, to secure such safeguards in the way such statute points out. The duty may exist outside the statute to provide flagmen or gates or other adequate warning appliances, if the situation of the crossing reasonably requires that,—and of this you are to judge,—and it depends upon the general rule

13 UTAH—27

that the company must use its privilege of crossing the streets on its surface grade with due and reasonable care for the rights of other persons using the highway, with proper care and caution on their part." And the supreme court held this instruction in harmony with the general rule of law in most of the states and at common law, continuing as follows: "The general doctrine is well stated in *Railway Co.* v. *Kuhn*, 86 Ky. 578, 6 S. W. 441, as follows: 'The doctrine with reference to injuries to those crossing the track of a railway, where the right to cross exists, is that the company must use such reasonable care and precaution as ordinary prudence would indicate. This vigilance and care must be greater at crossings in a populous town or city than at ordinary crossings in the country. So what is reasonable care and prudence must depend on the facts in each case. In a crossing within a city, or where the travel is great, reasonable care would require a flagman constantly at the crossing, or gates or bars, so as to prevent injury; but such care would not be required at a crossing in the country, where but few persons passed each day. The usual signal, such as ringing the bell and blowing the whistle, would be sufficient.' Citing Thomp. Neg. 417; *Railroad Co* v. *Goetz*, 79 Ky. 442. And it was accordingly held in that case that a railroad company which had failed to provide a flagman or gates, during the night time, when many trains were passing, at a crossing in a thickly-populated portion of the city of Louisville, buildings being situated near the track at that point, was guilty of negligence of the most flagrant character. See, also, to the same effect, *Railroad Co* v. *Dunn*, 78 Ill. 197; *Bentley* v. *Railway Co.* 86 Ala. 484, 6 South. 37; *Railroad Co.* v. *Young*, 81 Ga. 397, 7 S. E. 912; *Troy* v. *Railroad Co.*, 99 N. C. 298, 6 S. E. 77; *Bolinger* v. *Railroad Co.*, 36 Minn. 418.

Commenting upon this case, the supreme court further say: "It is also held in many of the States (in fact, the rule is well-nigh, if not quite, universal), that a railroad company, under certain circumstances, will not be held free from negligence, even though it may have complied literally with the terms of a statute prescribing certain signals to be given, and other precautions to be taken by it, for the safety of the traveling public at crossings. Thus, in *Railroad Co.* v. *Perkins*, 125 Ill. 127, 17 N. E. 1, it was held that the fact that a statute provides certain precautions will not relieve a railroad company from adopting such other measures as public safety and common prudence dictate." Citing *Thompson* v. *Railroad Co.*, 110 N. Y. 636, 17 N. E. 690. The reason for such rulings is found in the principle of the common law that every one must so conduct himself and use his own property as that, under ordinary circumstances, he will not injure another in any way. As a general rule, it may be said that whether ordinary care or reasonable prudence requires a railroad company to keep a flagman stationed at a crossing that is especially dangerous is a question of fact for a jury to determine, under all the circumstances of the case, and that the omission to station a flagman at a dangerous crossing may be taken into account as evidence of negligence, although in some cases it has been held that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous,— as, for instance, that it is in a thickly populated portion of the town or city; or that the view of the track is obstructed, either by the company itself or by other objects proper in themselves, or that the crossing is a much-traveled one, and the noise of approaching trains

is rendered indistinct, and the ordinary signals difficult to be heard, by reason of bustle and confusion incident to railway or other business; or by reason of some other such like cause,—and that a jury would not be warranted in saying that a railroad company should maintain those extra precautions at ordinary crossings in the country. The following cases are illustrative of various phases of the rules we have just stated.   *Eaton* v. *Railroad Co.*, 129 Mass., 364; *Bailey* v. *Railroad Co.*, 107 Mass. 496; *Railroad Co.* v. *Matthews*, 36 N. J. Law, 531; *Railroad Co.* v. *Killips*, 88 Pa. St. 405; *Railroad Co.* v. *Richardson*, 25 Kan. 391; *State* v. *Philadelphia W. & B. R. Co.*, 47 Md. 76; *Welch* v. *Railroad Co.*, 72 Mo. 451; *Frick* v. *Railroad Co.*, 75 Mo. 595; *Railroad Co.* v. *Yundt*. 78 Ind. 373; *Hart* v. *Railway Co.*, 56 Iowa 166, 7 N. W. 9, and 9 N. W. 116; *Kinney* v. *Crocker*, 18 Wis. 74.

From these authorities, it is clear that, while the statutes of Utah make some provision for the safety of the public while crossing tracks when crossing over the public thoroughfares in thickly settled communities of cities, yet these statutes will not relieve the railroad company from adopting such other reasonable measures for the public safety as common prudence may dictate, considering the danger, locality, travel, and surrounding circumstances of the case.   The reason of such rule is founded in the common law that every one must so conduct himself and use his own property as that, under ordinary circumstances, he will not injure another in any way, if such injury can reasonably be avoided by the use of reasonable care. The vigilance and care to be used would be much greater at public crossings in populous cities and towns, where many tracks are built across the streets, and are constantly in use, than the ordinary road crossings in the country, or less populous and less used localities; so that the reasonable care and prudence to

be used must depend upon the facts of each case. In the crossing of this particular street, where the travel is shown to be great, and the danger in crossing to be greater, we are of the opinion that reasonable care and prudence would require that a flagman be kept constantly at the crossing during the time that trains continue to cross over it, or that gates should be erected and controlled so as to lessen the danger of injury to passengers and travelers, and thus lessen the danger caused by the almost constant use of the tracks by the defendants and their trains. And, while this is true of this particular crossing, we are not of the opinion that these precautions should be observed by railroad companies in country districts, cities, or smaller localities, where but few persons pass each day, and where the probable danger would be much lessened. *Freeman* v. *Railroad Co.*, 74 Mich. 86, 41 N. W. 872; *Railway Co.* v. *Ives*, 144 U. S. 408, 12 Sup. Ct. 679.

We are of the opinion that the testimony was properly admitted, and concur with the jury that the defendants were negligent in not maintaining gates or providing a flagman at the crossing in question, and the court committed no error in giving the instructions to the jury.

We are equally convinced that no error was committed in allowing the plaintiff Jane English to give the names and ages of the children of the deceased. They were all parties to the action, and such testimony was proper even if they were not parties to the action, as this court held in *Pool* v. *Pacific Co.*, 7 Utah 303, 26 Pac. 654, and *Chilton* v. *Railway Co.*, 8 Utah, 47.

Appellants also contend that the damages awarded the plaintiffs were excessive. The jury rendered a verdict for $15,000, and the court, on motion for a new trial, reduced the damages to $13,000. The deceased was 38 years old, with an expectancy of life, under the American

table, of 29 and 62-100 years, and was earning $50 per month as driver of an express wagon. The jury were called upon to fix the pecuniary loss of the plaintiff by reason of the death in question. Appellants claim that, according to the American Experience Table, the value of a life at 38 would be $9, 546; that, according to the interest table issued by the Mutual Life Insurance Company, the insurable value of a healthy man of 38 years would be, at 6 per cent, $8,214; $10,000, placed at interest, at the legal rate of 8 per cent, would amount to $800 per year, or $200 more than the deceased was earning. The law will allow nothing more than the pecuniary loss as shown by the proof and measured by a pecuniary standard. The extent of this loss should not be measured by the wealth or property of the recipient or giver, but by his earnings, care, health, beneficient and pecuniary contributions given, or in reasonable expectation of being given, to the widow and children, as shown by the proof and judged from all the circumstances of the case to be just, but measured by a pecuniary standard. *Pool* v. *Railroad Co.*, 7 Utah 310, 26 Pac. 654; *Chilton* v. *Railway Co.*, 8 Utah 47, 29 Pac. 963. Under the circumstances of this case, we are of the opinion that the damages and judgment are excessive to the amount of $3,000, and should be reduced to the sum of $10,000; and that judgment should be entered for that amount accordingly, with costs in addition thereto. The judgment of the district court is modified accordingly, and that court is directed to set aside the judgment herein, and enter judgment in favor of the plaintiffs, and against the defendants, for the sum of $10,000 and costs.

ZANE, C. J., and BARTCH, J., concur.