Lewis DUNCAN, individually and as personal representative of the Estate of Patrick Duncan, deceased; Jason E. Duncan, a minor by and through his Guardian ad Litem; Alice Duncan; Noreen Duncan; Michael Duncan; Tim Duncan; Kevin Duncan; Brian Duncan; Michelle Bowers, individually and as personal representative of the Estate of Jefrey and Nicole Bowers, deceased; Judson Bowers; Florence Hanson; Shelly Bowers; Sherry Bowers; Monica Henwood, individually and as personal representative of the Estate of Ramon Henwood, deceased; Phyllis Henwood; and Owen Henwood, Plaintiffs and Appellants,

v.

UNION PACIFIC RAILROAD COMPANY, a corporation; The State of Utah; Paul Kleinman; and Does 1 through 100, inclusive, Defendants and Respondents.

No. 890291–CA.

Court of Appeals of Utah.

April 12, 1990.

Michael A. Katz (argued), Burbidge & Mitchell, Salt Lake City, for appellants.

J. Clare Williams (argued), Larry A. Gantenbein, Salt Lake City, for respondents Union Pacific R. Co. and Paul Kleinman.

Allan L. Larson (argued), Craig Barlow, Anne Swenson, Snow, Christensen & Martineau, Salt Lake City, R. Paul Van Dam, State Atty. Gen., Stephen J. Sorenson, Asst. Atty. Gen., Salt Lake City, for respondent State of Utah.

Before BENCH and JACKSON, JJ., and BULLOCK,[1] Senior District Judge.

## OPINION

J. ROBERT BULLOCK, Senior District Judge.

Plaintiffs appeal from a summary judgment dismissing their wrongful death action arising out of a train-automobile collision. We affirm.

Droubay Road is a two-lane thoroughfare running north and south in rural Tooele County. At one point, it intersects the Union Pacific Railroad tracks at approximately a 43–degree angle on the north and a 136–degree angle on the south. Three roadside signs warn oncoming motorists of the crossing, one sign located about 300 feet from the crossing, and two on either side of the road 19 feet from the crossing. There are no flashing lights or mechanical devices at the crossing to warn of an approaching train, but nothing obstructs a motorist's view of the tracks for several thousand feet.

On the evening of April 9, 1983, at about 8:50 p.m., a Union Pacific train operated by Paul Kleinman struck an automobile and killed all four occupants of the vehicle at the Droubay Road crossing. There is no evidence to indicate that the train was negligently or improperly operated, and its headlight, warning bells, and whistles were activated well in advance of the crossing. The engineer, Kleinman, averred that he saw the car approach the crossing but believed that it would stop. When it became apparent that the car was not going to stop, it was too late for him to stop the train.

The Utah Department of Transportation (UDOT) periodically evaluated the Droubay Road crossing in planning the allocation of its resources, including federal funding, for state-wide highway improvements. Under the methods used at the time, the Droubay Road crossing did not rank high enough in UDOT's prioritization of the State's railroad crossings to receive additional safety improvements, such as electrified lights and crossbars.

The heirs of the accident victims sued Union Pacific and engineer Kleinman for negligent operation of the train, negligent maintenance of the railroad right of way at the Droubay Road crossing, and for entrusting operation of the train to an allegedly unfit employee. The heirs also sued the State, claiming that the safety improvements at the crossing were inadequate. All of the defendants moved for summary judgment, and the district court granted their motions and dismissed the complaint. Plaintiffs appealed.

## CLAIMS AGAINST UNION PACIFIC

In defense against the motions for summary judgment, the plaintiffs filed an affidavit of one Robert Crommelin, a traffic safety engineer. In Crommelin's opinion, "the warning signs present at the crossing were clearly inadequate" and "the intersection [was] clearly 'extra hazardous.'" The district court, however, struck Crommelin's affidavit on the grounds that 23 U.S.C. § 409 (Supp.1989) forbade admission into evidence of the factual basis for Crommelin's conclusions, and Utah Rule of Civil Procedure 56(e) permits only affidavits which state "such facts as would be admissible in evidence[.]" Crommelin's opinion was based partly on information gained from UDOT's records of the Droubay Road crossing. To facilitate candor in administrative evaluations of highway safety hazards, 23 U.S.C. § 409 prevents a court from receiving records of such evaluations into evidence.[2] Therefore, under this federal statute, the documents from which Crommelin obtained a large part of the data used in reaching his conclusions were inadmissible.

On that basis, the district court struck Crommelin's affidavit. However, the dis-

---

1. J. Robert Bullock, Senior District Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1989).

2. The legislative purpose of section 409 can be gleaned from H.Conf.Rep. No. 100–27, 104th Cong. 1st Sess. 172–173, *reprinted in* 1987 *U.S. Code Cong. & Admin.News* 66, 156–57.

trict court also ruled that, even if the affidavit were considered, the case should be dismissed on its merits. Faced with these alternative grounds for the same result, we choose on appeal in this case to rest our decision on the merits. We will thus take Crommelin's opinion at face value.

■ Even if Crommelin's affidavit is considered, plaintiffs did not show that Union Pacific breached any duty of care in the collision at the Droubay Road crossing. Plaintiffs alleged negligence in the operation of the train by Kleinman and, through *respondeat superior,* by Union Pacific, as well as negligence by Union Pacific in employing an unfit train operator and in maintaining its right of way. Plaintiffs also sought punitive damages from Union Pacific for willful and reckless conduct. Plaintiffs introduced no evidence to show that the train was negligently operated, much less that the collision was willfully and recklessly caused, and no evidence to show that Kleinman was unfit to operate the train. Kleinman avers that he operated the train properly. Of course, Kleinman's testimony is biased, and there are no known witnesses surviving the crash other than Union Pacific employees. Nevertheless, lacking *any* evidence to the contrary, we conclude that plaintiffs failed to show negligence in operating the train or in entrusting its operation to Kleinman.[3]

■ The only claim against Union Pacific on which evidence was introduced was the claim for negligent maintenance of the railroad right of way, which is supported, from plaintiffs' point of view, by Crommelin's affidavit. We therefore proceed to consider this claim.

■ It is settled that a railroad has a tort duty to maintain its rights of way in a condition safe to motorists who traverse them at established crossings.[4] However, there seems to be a lack of clarity about the standard of care required of the railroad in the observance of this duty, and this apparent lack of clarity has led to some criticism of the Utah standard of care as it was understood.[5] Since we must apply a standard of care in determining whether Union Pacific breached its duty, we attempt to state clearly the extent to which a railroad must make its right of way safe for motorists to cross.

■ The confusion concerning the standard of care centers in the meaning of the words "more than ordinarily hazardous," which were used in applying the standard of care in two Utah cases, *Bridges v. Union Pacific R.R. Co.,* 26 Utah 2d 281, 488 P.2d 738 (1971), and *English v. Southern Pacific Co.,* 13 Utah 407, 45 P. 47 (1896). These words were never intended to impose a standard of care higher than ordinary care, the degree of care exercised by a reasonable person under the circumstances.[6] Thus, the railroad is required to take precautions to prevent injury to crossing motorists if a reasonable person in the railroad's position would take such precautions.[7]

■ In determining what is reasonable under the circumstances of a railroad crossing, it is obvious that every railroad crossing is hazardous, but, since it is not practicable to eliminate all railroad crossings, the simple existence of a railroad crossing is not in itself a breach of a duty of care. Much of everyday life presents hazards; driving or walking along a street are hazardous, and so are stairs, electricity, and many other things, but we tolerate those hazards because of the impracticability of eliminating them. In determining

---

3. See *Ron Case Roofing & Asphalt Paving Co. v. Blomquist,* 773 P.2d 1382, 1385 (Utah 1989); *Creekview Apartments v. State Farm Ins. Co.,* 771 P.2d 693, 695 (Utah Ct.App.1989).

4. *Gleave v. Denver & Rio Grande W. R.R. Co.,* 749 P.2d 660, 662–64 (Utah Ct.App.1988).

5. *Wilde v. Denver & Rio Grande W.R.R. Co.,* No. C–83–149J, slip op. at 16, 1985 WL17370 (D.Ut. April 3, 1985).

6. *English,* 45 P. at 50.

7. See *Meese v. Brigham Young Univ.,* 639 P.2d 720 (Utah 1981); *Whitman v. W.T. Grant Co.,* 16 Utah 2d 81, 395 P.2d 918 (1964); Restatement (Second) of Torts § 283 (1965).

whether a mishap involving one of those hazards is tortious, the question is not whether a hazard existed, but rather whether, under prevailing community standards, the defendant should bear the responsibility to discover and ameliorate a hazard, in light of the practicability of doing so and the costs and benefits to society of requiring the defendant so to act.[8] In the case of railroad crossings, the cost of eliminating the hazard, such as by installing overpasses at all railroad crossings, including rural ones, does not warrant a duty of care so rigorous that simply having a railroad cross a street is tortious. Rather, for a railroad to be liable for a crossing mishap, there must be something about the railroad's right of way that creates a hazard to motorists greater than the hazard presented by the simple fact that the railroad and the street intersect.

■ In determining what is reasonable to require of a railroad in its tort liability for crossings, it would thus be error to hold that the railroad right of way cannot cross a street. However, for such a crossing, the railroad is required to take every reasonable action to assure the safety of motorists who can reasonably be expected to cross the right of way. In determining what is reasonable under the circumstances of a specific case, the trier of fact must ultimately weigh the burden on the railroad, and indirectly on the public, of requiring added precautions, against the benefits that would be derived by the public at large from such precautions. For example, in the *Gleave* case,[9] wild vegetation on the right of way obscured oncoming trains from motorists at the crossing. The cost of removing or maintaining the vegetation was minimal compared to the enormous benefit to the public of being able to see an approaching train at a frequent crossing.

The imposition of a tort duty on the railroad to remove or maintain the vegetation was therefore clearly correct.

■ In this case, there is nothing to indicate what could have made Union Pacific's right of way safer to motorists crossing on Droubay Road. The path of the train is clearly visible to oncoming motorists. Plaintiffs suggest that Union Pacific should have placed warning signs and devices on Droubay Road, including automatic gates blocking traffic on the Road from crossing the tracks when a train was approaching. It is not, however, the responsibility of the railroad to place signs and devices on the public road. The railroad must maintain its own right of way, but it is not under any duty to place signs or devices on the public road.

The design and maintenance of state roads and the control of traffic on state roads are UDOT's responsibilities and prerogatives.[10] At common law, this responsibility at railroad crossings was shared with the railroad.[11] Thus, in *English*, the railroad was found liable for failing to flag motorists on an intersecting city street. Since *English*, however, UDOT has been established, and the Legislature invested UDOT with "power to determine and prescribe the manner ... of ... protection of each crossing."[12] Although that responsibility in no way reduces the railroad's responsibility to maintain its right of way,[13] it would nevertheless, under ordinary circumstances, place the railroad in the role of meddler, trespasser, or usurper if the railroad were to put signs on the public road or forbid traffic on the public road from crossing its right of way. Union Pacific therefore had no duty to place signs or roadblocking devices on Droubay Road,

**8.** *See Erickson v. Walgreen Drug Co.,* 120 Utah 31, 232 P.2d 210, 31 A.L.R.2d 177 (1951); *Wagoner v. Waterslide, Inc.,* 744 P.2d 1012, 1013 (Utah App.1987).

**9.** *Gleave v. Denver & Rio Grande W. R.R. Co.,* 749 P.2d 660, 662–64 (Utah 1988).

**10.** Utah Code Ann. § 54–4–15.1 (1990).

**11.** Although we hold that the railroad does not have authority or responsibility to place signs or roadblocks on the public road, we note that the cost of protecting users of the public road continues to be shared with the railroad pursuant to Utah Code Ann. § 54–4–15.3 (1990).

**12.** Utah Code Ann. § 54–4–15(2) (1990).

**13.** *Gleave,* 749 P.2d at 664.

and it is not liable in tort for its failure to do so.

## CLAIMS AGAINST UDOT

■ Governmental immunity is UDOT's principal defense [14] against plaintiffs. Governmental immunity shields sovereign policy-making and discretion from state-law damage claims by generally precluding damage liability for performance of a governmental function, subject to certain statutorily enumerated waivers.[15]

Resolution of the governmental immunity question in this case is controlled by *Gleave*, which held that UDOT was governmentally immune in determining the precise method to be used in warning persons on a public road approaching a railroad crossing. We follow *Gleave*, and hold that UDOT is immune in this case. We add, however, a few comments to address the particular arguments of counsel in this case.

■ Plaintiffs cite *Bowen v. Riverton City*, 656 P.2d 434 (Utah 1982) in an attempt to avoid governmental immunity. In *Bowen*, the Utah Supreme Court reversed a summary judgment in favor of Riverton in a tort action. *Bowen* asserted that a stop sign at a busy Riverton intersection was lying on the ground as Bowen and another vehicle collided in the intersection.

Bowen came after the pathbreaking *Standiford v. Salt Lake City Corp.*, 605 P.2d 1230 (Utah 1980), but did not cite *Standiford* or refer to its test for "governmental function," the threshold of governmental immunity analysis. *Standiford* held that the test for determining governmental immunity is "whether the activity under consideration is of such a unique nature that it can only be performed by a governmental agency or that it is essential to the core of governmental activity." *Standiford*, 605 P.2d at 1236–37. Under this test, we examine the nature of the activity itself, not the identity of the person performing the activity. In this case, for example, the activity in question consists of designing and maintaining a road. It would make the analysis tautological to define the activity as designing and maintaining a *public* or *governmental* road.[16]

As Judge Jackson points out in his separate concurring opinion, the absence in *Bowen* of a reference to *Standiford* could simply be a result of the procedural posture of the *Bowen* case. Possibly the only issues before the court in *Bowen* were the elements of *Bowen*'s prima facie case, and the court did not reach the issue of governmental immunity because it is a defense, rather than an element of the prima facie case. However, *Bowen*'s emphasis on Riv-

14. We logically do not reach the affirmative defense of governmental immunity without first determining or presuming that a plaintiff has established a prima facie case. *See Ferree v. State of Utah*, 784 P.2d 149 (Utah 1989). However, while UDOT's prima facie liability was perhaps implicitly presumed in the district court's reasoning, the district court did not expressly review plaintiffs' prima facie claim against UDOT. We are reluctant to delve into an issue on which the trial court has not expressly ruled, for the reasons explained in *Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 654 (Utah 1988). Therefore, we choose to rest our decision on governmental immunity and presume for purposes of argument (but do not hold) that the plaintiffs have stated a prima facie case of negligence by UDOT. *See Kirk v. State of Utah*, 784 P.2d 1255 (Utah App.1989).

15. *See Utah Code Ann.* § 63–30–10 (1989). The scope of the governmental immunity issue in this case is limited. Plaintiffs have not sued any governmental personnel, and therefore, the

immunity of officials is not in issue, nor have plaintiffs raised constitutional arguments such as those considered in *Condemarin v. University Hospital*, 775 P.2d 348 (Utah 1989).

16. In adopting its test for governmental function, *Standiford* renounced the earlier governmental/proprietary distinction because of inconsistencies that had developed over the course of its application.

Like the *Standiford* test, the governmental/proprietary distinction was originally meant to restrict the application of governmental immunity. However, in time, the governmental/proprietary analysis degenerated from real thought of its meaning to simple categorization of the activity in question as involving a golf course, a park, a hospital, etc. To some extent, the same consequences can result from a facile categorization approach under the *Standiford* test. We therefore decline to make an entry in a laundry list of governmental functions per se, eliminating all thought in future cases of the basic test established in *Standiford*.

erton's duty to maintain streets becomes rather disingenuous lip service if Riverton had a viable defense of governmental immunity against all liability based on that duty. While procedurally it is important to observe the distinction between plaintiff's prima facie case and defendant's defenses, in a more basic sense, what is ultimately important is the scope of governmental responsibility, which, in a well-pleaded case, is a function both of prima facie liability and available defenses. It would also seem to be a waste of resources to reverse and remand *Bowen* for a trial on the negligence question if there was no way for *Bowen* to recover due to governmental immunity.

■■■■■ *Bowen*'s emphasis on the government's duty in tort to assure safe streets is entirely consistent with *Standiford*, if we accept the premise that the decision whether to exert any control at all over intersecting traffic is not a governmental function giving rise to immunity from tort liability. In other words, the government may be held liable in tort to provide some effective warning or control for traffic at a city intersection. However, the duty to provide some effective warning or control must be distinguished from more than minimal maintenance and from enhancement of the means of providing warning and control. The case of *Richards v. Leavitt*, 716 P.2d 276 (Utah 1985) (per curiam) required compliance with the notice requirements of governmental immunity for a claim based on allegedly inadequate maintenance of a stop sign. From a comparison of *Bowen* and *Richards* and in light of *Gleave*, we conclude that as long as warning or control signage of a clear hazard is in existence and maintained enough to give it minimal effectiveness, the

government is not liable in tort for its failure to better maintain or to enhance the signage. If the signage has some cognizable effect in warning or controlling traffic at a clear hazard, its maintenance and improvement are governmental functions for which the government is immune from suit in Utah courts.

Highway maintenance and improvement are predominately [17] fiscal matters. Every highway could probably be made safer by further expenditures, but we will not hold UDOT (and implicitly, the legislature) negligent for having to strike a difficult balance between the need for greater safety and the burden of funding improvements. As we pointed out in *Gleave*, and as UDOT emphasizes here, there are hundreds of unelectrified railroad crossings in Utah, and it is not fiscally feasible to equip them all with the best possible means of assuring traffic safety. Rather, UDOT prioritizes the crossings in allocating the limited funds available for crossing improvements. The role of the judiciary in that prioritization and allocation process is strictly limited. In a case seeking judicial review of that administrative process, we would exercise our reviewing function with deference to the administrative agency under the "arbitrary and capricious" standard. However, in a tort action such as this, the deference to a governmental function is absolute unless waived, and we do not review it at all under tort principles.

In this case, we are not presented with a lack of any effective control of traffic, since there are three signs on Droubay Road where it approaches the railroad. The basis asserted here for recovery against UDOT is its failure to *better* warn

---

17. Not every governmental activity that affects the public fisc is a governmental function. Clearly nongovernmental functions, such as providing utility services or recreation, or serving process, may be financed in part by funds obtained through governmental revenue exactions, and liability incurred in performing those functions will be satisfied out of the public treasury. *See Schultz v. Conger*, 755 P.2d 165 (Utah 1988); *Dalton v. Salt Lake Suburban Sanitary Dist.*, 676 P.2d 399 (Utah 1984); *Thomas v. Clearfield City*, 642 P.2d 737 (Utah 1982); *Johnson v. Salt Lake city Corp.*, 629 P.2d 432 (Utah

1981). However, the sources of funds to conduct the activity or to pay an eventual judgment do not determine whether the activity in question is a governmental function. In this case, disregarding the fact that the funds for railroad crossings may derive in part from public sources, we are nevertheless left with an overridingly fiscal question: How much to spend on each railroad crossing that could be improved. We believe that the governmental budgeting and spending involved in deciding how to improve the safety of railroad crossings suffice to make that decision a governmental function.

and control traffic at the crossing. Since we have concluded that UDOT is immune for its failure to do more than minimal warning and control, we hold that plaintiffs cannot recover against UDOT or the State.

## CONCLUSION

We therefore hold in this case that, even considering the Crommelin affidavit and considering the evidence in the light most favorable to the plaintiffs, they failed to show any negligence by Union Pacific in the design and maintenance of its right of way. Union Pacific is not responsible for controlling traffic on state roads, and the state, having given at least some warning or control at this railroad crossing, is governmentally immune in deciding whether to improve the means of warning or control at the crossing because of the fiscal effects of such a decision.

Thus, these plaintiffs have not shown negligence by the railroad in the accident at this crossing, where the oncoming train was clearly visible from a lengthy distance on the road toward the crossing, and the train was not shown to have been negligently operated. Signs notified approaching drivers of the crossing, but UDOT is not liable for not having expended more funds in making more extensive safety improvements that might have prevented the accident. The net effect of this holding is that if the railroad's right of way does not negligently obscure an oncoming train, the train is properly operated, and if some visible warning sign age is present on the public road, then the plaintiff is not entitled to relief in tort for an injury at the crossing. We do not consider this outcome to be harsh or unjust, although any tragedy in which life is lost or impaired is regrettable, whatever the cause.

The dismissal of the plaintiffs' case is affirmed.

BENCH, J., concurs.

JACKSON, Judge (concurring):

Although I concur in the result reached by the majority and in most of its analysis, I write separately to disassociate myself from the faulty analysis of the governmental immunity issue. Contrary to the majority's characterization, *supra* at 6, UDOT's general activity in this case does not consist of "designing and maintaining a road." It consists of the installation and improvement of traffic safety devices and signs at railroad crossings. As for the specific, purportedly negligent act by UDOT, plaintiffs in this case alleged that UDOT negligently failed to install a different, presumably safer, kind of traffic warning device at a railroad crossing. The same claims were raised by the plaintiff in *Gleave v. Denver & Rio Grande W.R.*, 749 P.2d 660 (Utah Ct.App.), *cert. denied*, 765 P.2d 1278 (1988). As the majority recognizes, the outcome in this case is controlled by *Gleave*, in which we held that (1) UDOT's general activity in evaluating, installing, maintaining, and improving safety signals or devices at railroad crossings is a governmental function within Utah Code Ann. § 63–30–3 (1986) under the test set forth in *Standiford v. Salt Lake City Corp.*, 605 P.2d 1230 (Utah 1980); and (2) the specific act of UDOT which the plaintiff claimed was negligent, i.e., the failure to upgrade safety devices at a particular railroad crossing, arose out of the exercise of a discretionary function, under the test in *Little v. Utah State Div. of Family Servs.*, 667 P.2d 49, 51 (Utah 1983), for which immunity had not been waived by Utah Code Ann. § 63–30–10(1)(a) (1986).

The majority appears unaware of the two-step analysis—used, for example, in *Gleave* and *Rocky Mt. Thrift Stores v. Salt Lake City Corp.*, 784 P.2d 459 (Utah 1989) —that is necessary to resolve a governmental immunity claim in which the parties contest whether, even if the general activity is a governmental function, the allegedly negligent act arose out of the exercise of a "discretionary function" under section 63–30–10(1). If the general activity under consideration is not a governmental function within the meaning of section 63–30–3, then there is no immunity. If the general activity is a governmental function, then the *Little* test must be applied to determine if the specific, allegedly negligent act or omission is purely discretionary under sec-

tion 63–30–10(1)(a). If it is purely discretionary, then immunity has not been waived by section 63–30–10(1)(a). If it is not purely discretionary, then immunity has been waived by section 63–30–10(1).

The failure to appreciate the difference between these two distinct inquiries apparently underlies the majority's confusing attempt to harmonize the results in *Bowen v. Riverton City*, 656 P.2d 434 (Utah 1982) and *Richards v. Leavitt*, 716 P.2d 276 (Utah 1985) (per curiam) with *Standiford* and *Gleave*. Governmental immunity was not even an issue in *Bowen*, a case involving the allegedly negligent failure of the city to maintain a stop sign that had been knocked down, so it is not really surprising that no mention was made of *Standiford*. It is the substance of the issues actually raised and of the tacit assumptions made in *Bowen*, not the case's procedural posture, that is important. The summary judgment in favor of the city, which the supreme court reversed in *Bowen*, had been granted on the basis that the city was not negligent as a matter of law on the undisputed facts; the summary judgment was not granted on the basis of any immunity. The first unspoken assumption in *Bowen*, which was subsequently the express holding in *Leavitt*, 716 P.2d at 279, is that the maintenance and repair of traffic signs is a governmental function. *Leavitt*, which also involved a municipality's failure to maintain a traffic control device at a highway intersection, addressed another issue not raised in *Bowen*, i.e., whether immunity for the exercise of that governmental function had been statutorily waived. The court in *Bowen* tacitly assumed that it had, or the summary judgment in favor of the municipality could have been affirmed on the alternate ground of immunity. The *Leavitt* court concluded that the immunity provided to the city by section 63–30–3 for its activities in maintaining traffic control devices had been expressly waived *by section 63–30–8* "for any injury caused by a defective, unsafe, or dangerous condition of any highway, road, street, alley, crosswalk, sidewalk, culvert, tunnel, bridge, viaduct, or other structure located thereon." Relying

on its prior decision in *Bigelow v. Ingersoll*, 618 P.2d 50 (Utah 1980), decided two years before *Bowen*, the *Leavitt* court reaffirmed that the express waiver of immunity in section 63–30–8 is not subject to the section 63–30–10(1)(a) discretionary function exception to the waiver of immunity. The court thus read section 63–30–8 as expressing the legislature's view that an act or omission in the exercise of a governmental function that created a "defective, unsafe, or dangerous condition" on a public way could *never* involve activity at the basic policy-making level for which immunity is preserved by section 63–30–10(1)(a).

Unlike the plaintiffs in *Leavitt* and *Bigelow*, however, but exactly like the injured plaintiff and appellant railroad in *Gleave*, 749 P.2d at 667 & n. 6, the plaintiffs in this case have never pleaded or contended that the discretionary function analysis under section 63–30–10(1)(a) is unnecessary and irrelevant because the decedents' injuries resulted from an unsafe or dangerous condition on a road within the purview of section 63–30–8. Instead, they asked the trial court and us to overrule one of the two aforementioned holdings in *Gleave* and conclude either that (1) UDOT's evaluation, installation, maintenance, and improvement of safety signals or devices at railroad crossings is *not* a governmental function within section 63–30–3; or (2) UDOT's failure to install upgraded safety devices at the subject railroad crossing did *not* arise out of a section 63–30–10(1)(a) discretionary function.

Since my colleagues and I have unanimously declined the invitation to abandon *Gleave*, it is unfortunate that the majority adds confusion to an already difficult area of law in its flawed analysis of *Leavitt* and *Bowen*, which should be disregarded as dicta.