## HAARSTRICH v. OREGON SHORT LINE R. CO.

No. 4604.   Decided November 29, 1927.   (262 P. 100.)

George H. *Smith*, *Robert B. Porter*, *J. V. Lyle*, and *Dana T. Smith*, all of Salt Lake City, for appellant.

*Claude T. Barnes*, of Salt Lake City, for respondent.

THURMAN, C. J.

This is an action to recover damages for an injury occurring at a railroad crossing on what is known as Beck street in the northern part of Salt Lake City. The street forms part of the public highway leading from Salt Lake City to Ogden, and the injury occurred in a collision between the automobile in which plaintiff was riding and one of the cars of the defendant company. It is alleged in the complaint that the collision occurred at about 1:15 a. m. on September 19, 1926; that plaintiff at the time was riding in an automobile, as a guest, along the west side of said street toward the railroad track of defendant, which crosses said street; that "suddenly and without any previous warning, whistle, bell or other signal, defendant negligently and carelessly backed a chain of cars from the westward on said track toward said Beck street; that the foremost of said cars was of the gondola type, dark painted and low, and indistinguishable by the driver of said automobile from the surroundings of said crossing." It is then alleged that there was neither switchman, brakeman, nor light on the said gondola car, and no flagman at said crosing, and when the front end of said car entered Beck street and crossing the said automobile was so close that in spite of every effort on the part of the driver

of said automobile to stop or swerve out of the path of said gondola car, the said automobile collided therewith, as a result of which and because of defendant's said negligence, plaintiff was seriously injured, for which she prays damages in the sum of $25,000.

Defendant, answering the complaint denies it was negligent in the respects alleged in the complaint or that plaintiff's injury was caused by any negligence of defendant. Further answering the complaint, and as an affirmative defense thereto, defendant alleges:

"That on the night of the 19th day of September, 1926, the plaintiff was riding in an automobile upon Beck street in a southerly direction at a point where certain tracks belonging to this defendant cross said Beck street; that at said time this defendant was switching certain cars across said street, and after it had switched a car partly across said street the automobile in which this plaintiff was riding struck one of the cars of this defendant; that said plaintiff could have seen said car and other cars for a long distance along said highway; and that her failure to either look or listen for a car or cars was the proximate and sole cause of said accident and whatever injury she may have suffered."

The cause was tried to a jury and a verdict rendered in favor of plaintiff for the sum of $5,035. On defendant's motion for a new trial the court entered an order to the effect that a new trial would be granted unless plaintiff would consent that the amount of the verdict be reduced to the sum of $1,040. Plaintiff consented to the reduction, and judgment was entered accordingly.

The defendant appeals from the judgment and assigns as error certain instructions to the jury, refusal to instruct as requested by defendant, and error in denying defendant's motion for a directed verdict and its motion for a new trial.

The evidence given at the trial, without dispute, tends to show that on the evening of September 18, 1926, Ben Birkenshaw, the owner of the automobile which was later wrecked in the collision, in pursuance of a previous arrange-

ment, gathered together a group of young people at different points in the southern part of Salt Lake City and took them for a ride over different parts of the city. The group consisted of four boys and four girls, including the plaintiff and Birkenshaw, the owner of the automobile. At about 12 o'clock midnight at the close of a certain dance in the southern part of the city they started to drive around the city for a ride with no apparent objective point in view. Two girls and two boys, including the driver and the plaintiff, occupied the front seat. The other members of the party sat behind. The plaintiff sat on the lap of one Forsythe, on the right; the driver sat on the left; and a Miss Markham sat between. The exact position of those on the rear seat is not material. After driving around the city for some time they drove north on the highway leading towards Ogden, otherwise known as Beck street, as denominated in the pleadings. At some point beyond Beck Springs, on or near said highway, they turned the car around and started back over the highway towards the city. It was then about 1 or 1:15 a. m. of September 19th, as alleged in the complaint. A short distance south of the point where they turned is a sharp turn in the highway known as "Death Curve," and about 900 feet south of said curve are situated defendant's industrial tracks, three in number, separated from each other by an intervening space of 15 feet from center to center. The industrial tracks cross the highway substantially at right angles leading from the west towards the east. The evidence as to the speed of the automobile after rounding Death Curve and entering upon the tangent varies all the way from 20 to 50 miles an hour; but, as will hereinafter appear, the jury in answer to a special interrogatory found the speed to be between 25 and 30 miles an hour as the car approached the crossing. In any event, whatever may have been the speed at which the automobile was being driven, it collided with one of the defendant's cars moving towards the east on the north industrial track. The automobile was completely wrecked, and defendant's car

showed signs of having received a tremendous jolt. Every occupant of the automobile was injured more or less, the plaintiff, perhaps, more than any of the others.

The plaintiff's contention is that the defendant company was negligent in several particulars, and that such negligence was the proximate cause of the injury. The specific omissions relied on as negligence on the part of defendant are the failure to give warning by blowing the whistle, ringing the bell, and not having a switchman, brakeman, or light on the car or a flagman at the crossing. The testimony of all of the occupants of the automobile was to the effect that they neither heard a whistle blow nor a bell ring; that they saw no switchman, brakeman, nor light on the car, nor a flagman at the crossing. The testimony of the driver of the automobile was to the effect that after rounding Death Curve he was driving about 20 miles an hour; that he was looking straight ahead and saw no switchman, brakeman, or light on the car, nor saw any one swinging a lantern; that he did not see the railroad car until he was within 13 or 15 feet of it; that he immediately turned the automobile from the west side of the paved highway towards the east side and applied the brakes, thereby reducing the speed to about the same as the rate at which the railroad car was moving, which was five or six miles an hour.

The collision occurred east of the center of the paved highway, near the outer edge. The automobile was dragged by the railroad car to a point some 15 feet east of where the collision occurred. The driver testified that his automobile was in good repair; that the brakes and lights had recently been tested and were in good shape. He also testified that his sight and hearing were good, and that he could stop his car within 40 feet when it was running 30 miles an hour.

Lloyd Howlett, a witness for plaintiff, testified he and two other parties were driving on the highway from Ogden to Salt Lake City on the night in question and that

the automobile in which plaintiff was riding passed his automobile a short distance beyond Death Curve; that he was driving about 30 miles an hour and thought the car that passed him was traveling 35 miles an hour; that he saw the railroad car moving east when it reached the center of the street car track, which lies parallel with the highway a few feet to the west; that his car was at that time about 150 feet behind the automobile plaintiff was in, and he saw it swerve to the left when within about 15 feet of the car and saw the collision; that he was then 150 feet from the crossing; that he heard no whistle blow nor bell ring, saw no switchman, brakeman, or flagman, and saw no light on the car with which the automobile collided; neither did he see any one swinging a lantern; that his hearing and eyesight were good; that he assisted in moving the occupants of the automobile to the hospital.

We deem it unnecssary to detail specifically the testimony of the other occupants of the automobile. Their testimony is merely of a negative character as to warnings, signals, etc., as hereinbefore stated.

The plaintiff testified she saw the car on the track just before the collision and jumped up and said, "There's a train;" that she thought the driver swerved the automobile to the left, and when it struck the car she became unconscious. She further testified that she was 15 years of age, was acquainted with the driver of the automobile, had seen him drive several different cars and had never heard of his having had an accident while driving; that the boys had invited her and the other girls to go riding that night; that her hearing and eyesight were good; and that she was looking straight ahead all the time.

The testimony of the engineer, the engine foreman, fireman, and field man of the defendant was to the effect that they were engaged in moving cars from the west to the east side of the highway; that they had moved a car of coke over the middle track to a point about 60 feet east of the

highway; that they cut the car off at that point and a signal was given for the engineer to back up, which meant to go westward. The engine foreman testified that he stepped on the stirrup of the car and rode to the crossing; that he got off on the east side in line with automobiles that would be coming from Salt Lake and was looking both ways; that the switchman then turned the cars back up towards the witness; that he again looked back and saw no cars coming from Salt Lake; that he then looked north and saw an automobile turn the curve; that it was coming at a high rate of speed; that he stepped over on the north side of the crossing on the west portion of the pavement and began swinging his light; that he stood there swinging his light until the automobile came so close he had to jump out of the way; that he heard a crash and knew that the automobile had hit the car; that he immediately "caught the cut lever and the car separated and began moving westward"; that he then assisted in caring for the occupants of the automobile.

The testimony of the employees as to the speed of the railway car ranged from 3 to 6 miles an hour, while the automobile appeared to be running about 50 miles an hour. The foreman testified the automobile must have been 400 feet from the crossing when he stepped across to the north side of the track; that at that time the freight car had occupied the west side of the pavement; that the freight car was moving towards him as he went across the track. Other employees testified to seeing the foreman on the highway with his light, and also testified to the whistle being blown and to the ringing of the bell. There was also evidence that the electric light at the crossing was functioning, and that it was very light.

The court among other instructions, instructed the jury that:

"At the time of the accident the plaintiff was the guest of Ben Birkenshaw or Louis Lashaway, respectively the owner and driver of said car, and as such guest she was not chargeable with the negligence, if any, of such owner or driver."

The court then properly instructed the jury as to the immunities and liabilities of an "invited guest." Appellant excepted to the language above quoted, and assigns it as error.

The uncontradicted evidence shows that Birkenshaw, the owner of the automobile, invited the girls, including the plaintiff, to take a ride. Birkenshaw permitted Lashaway to drive the car, and he was driving it when the accident occurred. There is nothing in the evidence to indicate that plaintiff had any control whatever over the car or that she gave any directions concerning it. She was only 15 years of age, was acquainted with the driver, had seen him drive cars, and had never heard of his meeting with any accident while driving. The only apparent interest she had in the enterprise was the enjoyment of the ride which Birkenshaw and his driver had generously provided. We are of opinion the evidence conclusively shows as matter of law that she was an invited guest. *Montague* v. *Salt Lake & U. R. Co.*, 52 Utah 368, 174 P. 871; *Cowan* v. *Salt Lake & U. R. Co.*, 56 Utah, 94, 189 P. 599, and authorities cited in said cases. There was no error in the instruction complained of.

The controlling question, however, is, Was the negligence of defendant, if any, the proximate cause of the injury sustained by the plaintiff? It is a fundamental principal of the law of negligence that no matter how gross the negligence complained of may be, it creates no liability unless it is the proximate cause of the injury. It was contended by the defendant in its motion for a nonsuit and in its motion for a directed verdict that there was no evidence whatever that any negligence of defendant was the proximate cause of the injury. The same question was again raised in defendant's motion for a new trial. The ruling of the court upon each of these motions is relied on here as reversible error.

In order to arrive at a solution of this question it is necessary to visualize the situation. The following facts are

either undisputed in the evidence or conclusively found by the jury: From Death Curve to the point where the collision occurred is a tangent 900 feet in length. There was nothing throughout this entire distance to obstruct the vision of one driving south on the highway. The highway is paved to a width of 18 feet, and a street railway lies parallel therewith on the west. The distance between the western edge of the paved highway and the street railway is 7 feet. The collision occurred on the east side of the paved highway near the eastern edge thereof. The automobile struck the defendant's car 26 feet behind the front end thereof, thus conclusively indicating that defendant's car had progressed to a point east of the highway a distance of 24 or 25 feet. The jury found, in answer to special interrogatories, that the speed of the automobile in approaching the crossing was between 25 and 30 miles an hour while the speed of defendant's car was between 5 and 6 miles an hour. The driver of the automobile appeared to be an experienced driver, and testified that at a speed of 30 miles an hour he could have stopped his car within 40 feet. At a speed of 25 miles an hour he could have stopped within a shorter distance. From the premises above stated it appears that from the time defendant's car entered upon the highway until it collided with the automobile the front end of the car had reached a point 24 or 25 feet beyond, making in all at least 42 feet which the car had moved after entering upon the highway. The decisive question therefore is, At what point on the highway was the automobile when the defendant's car entered upon the paved highway? No matter whether the automobile was moving at 25 or 30 miles an hour or whether defendant's car was moving 5 or 6 miles an hour, it is quite conclusive that the automobile was moving five times as fast as was the car of defendant. So that if defendant's car moved 42 feet from the time it entered upon the highway until it was struck, the automobile must have been five times that distance north of the crossing when

defendant's car entered upon the highway, or 210 feet, which is five times the distance within which the driver of the automobile, according to his own testimony, could have stopped his automobile and avoided the collision. The street lights were functioning, and there appears to have been no reason whatever why he could not have stopped his car and avoided the collision if he had looked ahead and applied his brakes at the proper time. In view of the indubitable facts disclosed by the evidence, it is wholly immaterial whether the defendant strictly complied with the law as to warnings and signals. Its failure in that regard, if there was a failure, which is very doubtful, had nothing whatever to do with the accident and was in no sense the proximate cause of plaintiff's injury. Upon this question appellant calls our attention to the case of *Schmidt* v. *Chicago & N. W. Ry. Co.*, 191 Wis. 184, 210 N. W. 370, and quotes the following excerpt therefrom:

"While it may be conceded that these various signal devices were not working properly, we are confronted with the fact that the train was actually and physically upon and passing over the crossing at the time of the accident. It is well known that signal devices such as those in question are installed by railroad companies, sometimes voluntarily and sometimes pursuant to the requirements of law, not for the purpose of warning travelers upon the highway of the actual presence of a train upon the crossing, but for the purpose of warning them of the approach of a train. Conceding that the plaintiff and her companions in the automobile had a right to rely upon the operation of these signals to warn them of an approaching train, it by no means follows that they had any right to rely upon the operation of these signals for the purpose of warning them of the actual presence of a train passing over the crossing. It cannot be held that the railroad company should have anticipated that by reason of the defective operation of these signals plaintiff and her companions, or any one else traveling along the highway, would collide with a freight train actually passing over the crossing. If any authority for this rather self-evident proposition be needed, the cases of *Nadasky* v. *Public Service R. Co.*, 97 N. J. Law, 400, 117 A. 478, and *McGlauflin* v. *Boston & Maine R. R. Co.*, 230 Mass. 431, 119 N. E. 955, L. R. A. 1918E, 790, may be cited."

The holding of the court in the case just referred to is so manifestly sound we deem it unnecessary to cite other authority.

But it is contended by respondent that the Schmidt Case, from which we have quoted, is not in point because of the testimony of other witnesses to the effect that "the end of the freight car came into view and entered the side of the pavement at a time when the plaintiff was so close that they were 'right on it.' " The most pointed evidence on the part of the plaintiff as to when the freight car came into view is that of the witness Howlett, who testified that he first saw the car when it reached the center of the street railway track and that the automobile was then within 15 or 20 feet of the crossing. It only need be stated here that the testimony of Mr. Howlett in that respect flies in the face of uncontroverted physical facts and therefore is not substantial evidence. He testified the automobile swerved to the east, but he did not think it "slowed down." If that had been the case the automobile would have crossed the track ahead of the freight car and the collision could not have occurred. Instead, however, of the automobile crossing the track unscathed, as it might have done, Howlett himself testified the automobile struck the freight car 26 feet behind the front end. Mr. Howlett appeared to be an honest witness and wholly disinterested. If it be asumed that the freight car he saw on the street railway track was the second car in the train, instead of the first, his testimony would then be reconcilable with the physical facts; otherwise it is not.

The other errors assigned are not of sufficient importance to consider in detail except to say that instruction No. 10, assigned as error, is close to the border line between prejudicial and nonprejudicial error. It is doubtful if the instruction as to the matters objected to is warranted by any evidence in the case.

For the reasons stated, the judgment is reversed and the cause remanded for a new trial, at respondent's cost.

CHERRY, HANSEN, and GIDEON, JJ., concur.

STRAUP, J. (concurring).

I concur in the judgment of reversal. On the record I am of the opinion that the evidence respecting the negligence of the defendant, though in conflict, nevertheless is sufficient to justify a finding of negligence against the defendant; that the driver of the automobile also was negligent in not observing a proper outlook and in his failure in not timely discovering the defendant's train moving across the highway; that the negligence of the driver of the automobile is not imputable to the plaintiff; and that the plaintiff herself was not guilty of negligence. Hence, the propositions are, Was the negligence of the defendant, or that of the driver of the automobile, the sole proximate cause of the injury, or was the accident and injury the result of the combined negligence of the defendant and of the driver?

On the record I am of the opinion that the negligence of the driver was the sole proximate cause and that the negligence of the defendant was not a contributing but a remote cause. I base this largely on the undisputed fact that there was a street arc light and other lights near the crossing, and that an object at or approaching the crossing was readily discernible for a distance of 150 feet or more, besides a stoplight at or near the crossing.