## JONES v. BARRETT. et al.

No. 5312. Decided March 16, 1934. (30 P. [2d] 273.)

*Leon Fonnesbeck,* of Logan, for appellants.

*L. E. Nelson,* of Logan, for respondent.

MOFFAT, J.

Strange as it may seem, although neighbors and adjoining landowners are the parties whose property is alleged to be affected, this action is not between the neighboring landowners. Wolfensperger owns a lot adjoining plaintiff's lot and immediately west thereof. He built a small dwelling house on his lot. The plaintiff owns a larger lot on the east, upon which is a larger residence.

Plaintiff brings her action for damages, not against Henry Wolfensperger, because he built a house too large for his lot, nor because of his locating the dwelling too close to plaintiff's west property line, in violation of a city ordinance of Logan City, Utah; but against the city building inspector and others because the city building inspector, C. T. Barrett, "in his official capacity issued a permit, permitting and authorizing Wolfensperger to erect a residence upon his property." No complaint is made as to the manner or character of construction or the appearance thereof. As we read the complaint and the arguments about the issues, had the residence been located ten feet west of plaintiff's property line instead of where it was, three feet or five feet, as indicated by two different witnesses, plaintiff would have had no cause of action, although the neighbor on the west upon a similar theory may have had.

The case was brought on for trial before a jury resulting in a verdict and judgment in favor of the plaintiff in the

sum of $200 and against the defendants "C. T. Barrett, A. G. Lundstrom, and bondholder, Fidelity and Deposit Company, a corporation." The relationship of the defendants and the alleged reasons for making them parties defendant appear from the allegations of the complaint, hereinafter referred to.

The defendants, appellants here, have assigned fourteen errors, have argued ten of them; six of them relate to objections to the introduction of evidence, three of them to the order of the trial court overruling the separate demurrers of the defendants, one to the order denying defendants' motion for judgment in their favor notwithstanding the verdict, and the remainder relate to instructions either given or refused.

The first three assignments of error attack the complaint generally and specially for indefiniteness and uncertainty. The general demurrer reaches substantially the same question raised by the motion for judgment notwithstanding the verdict. If the plaintiff fails to state sufficient facts to constitute a cause of action against the defendant C. T. Barrett under the theory of the complaint, a fortiori no cause of action under the same facts could be supported against the mayor nor his surety. This matter must be determined by an analysis of the allegations of the complaint and an application of the principles of law applicable thereto. The complaint is of such character that a summarized statement will hardly suffice. We shall condense only to such extent as not to impair or affect the material allegations of the complaint.

The complaint alleges residence of the parties; that the defendant C. T. Barrett is the duly appointed, qualified, and acting building inspector of Logan City; that the defendant A. G. Lundstrom is the mayor of Logan City; and that the defendant Fidelity & Deposit Company is the mayor's surety upon a bond conditioned upon the faithful performance of his duties as such oficer. Although the complaint alleges that C. T. Barrett is the duly appointed, quali-

fied, and acting building inspector of Logan City, the plaintiff also alleges that "C. T. Barrett has not furnished or given a bond, nor has any bond been given in his behalf as required by the ordinances of the city and laws of the state relating to municipal officers," and it appears upon such ground claims a cause of action against the mayor and his surety for failure of the mayor to require the building inspector to file his bond. The complaint then sets out in full sections 68, 69, 70, 78, 88, 92, 221, and the briefs and argument refer to section 66 of the Revised Ordinances of Logan City 1927. The Revised Ordinances were received in evidence. We quote the sections in full:

66. "Before entering upon the discharge of their duties, all elective and appointive officers of the city shall take and subscribe the oath or affirmation required by law and give a bond, with good and sufficient sureties, payable to the city, conditioned for the faithful performance of their duties, as follows:

"(a) The city recorder and the city auditor, fifteen thousand dollars.

"(b) City commissioners and city marshal, two thousand dollars each.

"(c) The city treasurer in the sum of fifteen thousand dollars.

"(d) The attorney, the street supervisor, the sexton, the building inspector, the city physician, sanitary inspector, city engineer, poundkeeper, fire chief, assistant fire chief, water master and policemen, one thousand dollars each."

68. "The office of building inspector is hereby created. Said office shall be filled by the board of city commissioners, upon recommendation of the mayor. It shall be the duty of the building inspector to inspect all buildings and structures erected or proposed to be erected, or remodeled within the city, to ascertain if the ordinances in regard to building, plumbing and electric wiring are being complied with, and to examine and approve all plans and specifications for buildings before a permit shall be issued and to issue all permits as herein provided for."

69. "No person, firm or corporation shall begin erecting, moving or demolishing any building or structure within the corporate limits of Logan City without first having applied for and obtained a permit so to do from the building inspector; provided, however, that no permit shall be required for minor repairs necessary to be done on any structure, building or shed in Logan City. If the work authorized by a permit is not commenced within six months from date thereof, or if

the work authorized by such permit shall be suspended or abandoned for a period of six months, then such permit shall become null and void."

70. "In all cases of construction or alteration, plans and specifications, together with a detailed statement, blanks, for which, shall be furnished by the building inspector, sufficient to enable the building inspector to obtain full and complete information as to the character of the work proposed to be done under the permit shall be filed with the application for permit, and if the cost of the work is to exceed eight thousand dollars, two complete copies of plans and specifications showing and describing all parts of the construction shall be submitted and if approved shall receive the official stamp of the building inspector and one copy returned to applicant and upon issuance of a permit the other copy of said drawings and specifications, signed by the architect or owner, shall be filed in tthe office of the building inspector and remain on file there until the completion of all building operations had under said permit, when they shall be returned to the party who filed them or destroyed after ninety days."

78. "All that portion of Logan City embraced within the following prescribed limits shall be known as the residence fire district, viz. Beginning at the center of the intersection of 5th north and 5th east street, running thence west on 5th north street to the center of 1st west street; thence south to center of 4th north street; thence west to center of 3rd west street, thence south to center of 1st north street, thence west to 4th west street, thence south to center of 1st south street, thence east to center of 2nd west street, thence south to center of 3rd south street, thence east to center of 3rd east street, thence north to the Boulevard, thence northeasterly, following the center of said Boulevard to center of 4th north and 6th east streets, thence east to the center of 7th east street, thence north to center of 6th north street, thence west to center of 5th east street, thence south to place of beginning."

88. "The enforcement of these zoning regulations are entrusted to the building inspector under the rules and regulations as herein contained and the board of zoning commissioners, which shall consist of three men representing the various civic organizations of the city, and who shall be appointed by the city commissioners, and said board shall serve without pay. All decisions of the building inspector regarding zoning regulations may be appealed to the zoning commission, by any person claiming adverse treatment, and said board may modify such decisions so as to be in harmony with the general purposes and intent of these regulations."

92. "It shall be unlawful to erect any building in the residence district closer than 20 feet back from the property lines; provided that

where a building line has been established by a majority of the property on the block the builder may conform to that line; neither shall it be lawful to erect any building closer than 10 feet to the property line on the south or east sides of said building and not closer than 5 feet on the other sides of said buildings."

221. "The mayor as superintendent of the department of public affairs and finance shall have supervision over all records, and accounts of the city, unless otherwise required to keep or make accounts, records or accounts required to be kept in any of the offices or demoneys due the city. He shall inspect, or cause to be inspected, all records or acounts required to be kept in any of the offices or departments of the city and shall cause proper accounts and records to be kept and proper reports to be made."

The complaint also contains a description by metes and bounds of the property of the plaintiff and that of Henry Wolfensperger, upon whose property the building complained about was erected, with their respective locations. Plaintiff then further alleges:

"That it was the duty of the said C. T. Barrett, as Building Inspector pursuant to Section 68, aforesaid to ascertain if said premises had sufficient area to erect a residence thereon, in order to conform with the provisions of Section 92, aforesaid; that it was his duty to inspect said premises and either ascertain from a description of said property the dimensions thereof, or ascertain said fact from an actual survey of said premises; plaintiff alleges that if the defendant C. T. Barrett, had examined the description of said premises he would have advised that the same was but 37 feet wide; and that the proposed residence as described in said permit would be 27 feet wide, leaving only 10 feet remaining on both sides of said house when said ordinance, Section 92, aforesaid, requires 10 feet on the east of said proposed residence and 5 feet on the west side thereof; that it is also the duty of said defendant C. T. Barrett, as said building inspector to see that a house proposed to be built is actually erected 10 feet distant from the east line as required by ordinance, Section 92, * * *

"That the defendant A. G. Lundstrom, as Mayor of Logan City, failed and neglected to see that the said defendant C. T. Barrett was properly bonded, or failed to see that he was bonded at all, in order to give security for the faithful performance of his, the said C. T. Barrett's duties as Building Inspector of Logan City. That commencing with the first Monday in January, 1926, when the said defendant C. T. Barrett, took and assumed office as building inspector and when the said defendant A. G. Lundstrom took and assumed of-

fice as Mayor of Logan City, and ever since said time until during the month of July, 1931, and said C. T. Barrett, has continuously held his said office without giving bond as required by Section 66, of the Revised Ordinances of Logan City, Utah; and that during all of said time and ever since the first Monday of January, 1926, the said defendant A. G. Lundstrom, has continuously held the office of Mayor of Logan City, and during all of said time until the month of July, 1931, has failed and neglected to perform his official duty as required by Section 570x84 and Section 603 of the Compiled Laws of Utah, 1917, with reference to a bond for the defendant, C. T. Barrett.

"That by reason of the failure and neglect of the said defendant A. G. Lundstrom to see that the said defendant, C. T. Barrett was properly bonded as hereinabove alleged, and by reason of the fact that the said defendant, C. T. Barrett, is insolvent and has no property, as plaintiff is informed and believes, except such as is exempt from execution under and pursuant to the laws of this state, the plaintiff alleges that the defendant A. G. Lundstrom and his surety, the Fidelity and Deposit Company, are liable to the plaintiff for the payment of any judgment that the plaintiff might recover or have against the defendant C. T. Barrett."

There is also set out as a part of the complaint a copy of the mayor's bond and a copy of the permit issued by the building inspector. The building permit reads:

"Logan City Corporation.
"Department of Mechanical Inspection.
"Building Permit. Permit No. 1039-A

"Location of Building East 3rd North.

"Logan City, Utah, April 4, 1931.

"Permission is hereby granted Henry Wolfensperger owner or agent, having applied for permit and having agreed to comply with all ordinances relating to buildings, is hereby granted permission to him to erect on the above described premises a building to be used for dwelling.

"Dimensions 27x27, to be of frame construction with shingle roof, one stories high with cement concrete foundation and full basement. Cost of building when completed to be $1990 and designated as fireproof. Said building shall be completed on or before the——————— day of——————————, 193—.

"And that the said party to whom this permit is issued is hereby strictly forbidden the use of any public street, sidewalk, alley, land or public grounds for the purpose of storing or piling any building

materials except such space as provided in the ordinances of Logan City.

"And the said party is further notified and warned under penalties provided by the Revised Ordinances of Logan City that he must conform to all of said ordinances, and all rules and decisions of the Building Inspector, and all work must be done in accordance with the statements set forth herein and that no change in or departure from the general dimensions or construction described above, and further shown by the plans and specifications filed, will be allowed without permission and approval by the Building Inspector."

Having set forth in some detail the allegations of the complaint, they may now be compared and analyzed. Except for the necessity of so doing, the extended statement of the allegations of the complaint would not be justified. We shall discuss the situation as it relates to the defendant Barrett first, and then as to the other defendants.

We may assume for the purposes of the analysis that the defendant Barrett was a public officer of Logan City, and that the law is that a public officer who takes upon himself a public employment ministerial in character is liable to third persons for any injury occasioned by his own personal negligence or because of negligence or default in the discharge of his official duties in which a private individual has a special and direct interest if the injury thus sustained is proximately caused in consequence of the failure or neglect of the officer to perform the duty at all, or to perform it improperly.

It is settled with equal certainty that, since an officer must justify his action, if it can be justified, by pointing specifically to the law which authorized his action, and an officer being thus bound, before he may be charged with neglect or violation of duty, the law imposing or exacting the performance of a duty must be pointed to with equal certainty. Official powers and duties are to be found, if at all, in the provisions of the law relating to officers upon whom the powers are conferred or the duties imposed. Section 68 of the Revised Ordinances of Logan City as pleaded imposes upon the building inspector

the duty of "inspecting all buildings and structures erected * * * to ascertain if the ordinances in regard to building * * * are being complied with, and to examine and approve all plans and specifications for buildings before a permit shall be issued, and to issue all permits as herein provided."

No duty is imposed upon the building inspector by this section 68, supra, to require the applicant for a permit to furnish a description of the property upon which he proposes to erect the structure set out or detailed by the plans submitted; nor is there any duty imposed to examine the property or to direct the location of the structure sought to be erected, nor power given to the inspector to refuse a permit because the structure may not fit the particular lot upon which the building is proposed to be located. For all that appears in the ordinance, even if the building inspector had assumed to inquire about the location of the structure, assurance might have been given that the applicant had purchased, or proposed to purchase, additional ground.

Further, the limitation as to erecting buildings without having applied for and received a permit runs against the person, firm, or corporation erecting the building, and not against the building inspector. It is the duty of the applicant to furnish "plans and specifications" to the building inspector, "sufficient to enable the building inspector to obtain full and complete information as to the character of the work proposed." Not a word is said about lot, location, survey, adjoining property, or kindred matters. The thing about which the ordinance seems to be concerned is the character of the structure and work proposed.

Had the inspector refused to issue a permit to an applicant for a permit solely upon the ground that the applicant had failed or refused to furnish a description of his lot by metes and bounds, or to indicate the precise location on the lot upon which the structure was to be located, the building

inspector would have been unable to find in the ordinance pleaded, justification for such refusal.

Counsel for respondent maintains that the negligent act out of which his client's cause of action emerged was committed the moment the permit was issued and delivered to the builder. This brings us to section 88, supra. This section provides:

"The enforcement of these zoning regulations are entrusted to the building inspector under the rules as herein contained and the board of zoning commissioners, which shall consist of three men representing the various civic organizations of the city, and who shall be appointed by the city commissioners. * * * All decisions of the building inspector regarding zoning regulations may be appealed to the zoning commission, by any person claiming adverse treatment and the board may modify such decisions."

Clearly, the issuance of a building permit is not purely a ministerial matter. An appeal may be had by any person claiming adverse treatment. If plaintiff claimed adverse treatment, she should have appealed to the board of zoning commissioners.

We are still confronted with an insurmountable difficulty. The question as to what is the proximate cause of the alleged injury, as shown by the complaint, seems insurmountable upon plaintiff's theory of the case. Notwithstanding all that has been said in the complaint about the building inspector and his negligence, when it occurred, the allegations of the complaint and the common sense of the situation establish that any damages that have arisen or could arise do so because "the said Henry Wolfensperger erected the said residence upon his said premises and within three feet of the west line of plaintiff's premises," in violation of the city ordinance.

The permit upon which plaintiff bases her cause of action, and which permit she claims offends against her rights, and shows negligence or want of due care on the part of the building inspector in the discharge of a duty she claims the

building inspector owed to her, contains such language as places the responsibility where the city ordinances intended it should be. The ordinance says: "It shall be unlawful to erect any building in the residence district * * * closer than ten feet to the property line on the south or east." The owner or agent, it is then recited, "having applied for permit and having agreed to comply with all ordinances relating to buildings," under the permit permission is granted to erect a building upon the premises described as being located on East Third North street. The permit also warns the applicant that, under the penalties provided by the ordinances, "he must conform to all of said ordinances."

There is no allegation that Wolfensperger was servant, agent, employee, or in any capacity the representative of the defendants or any of them. It further appears from the quoted section 92 of the city ordinances that the limitations there imposed are limitations and duties imposed upon the use of property by the owner. Whether or not such limitations are valid or enforceable when applied to the particular facts and circumstances is not before us and need not be here discussed.

The enforcement of the zoning regulations of Logan City, as provided by these ordinances (section 88), is "entrusted to the building inspector * * * and the board of zoning commissioners." It is plaintiff's claim that the alleged negligence of the building inspector, proximately causing the injury complained of, occurred at the time the permit was issued. Such position is untenable. Whether or not Wolfensperger had a piece of paper in his pocket purporting to be a permit would be immaterial. It was the building of the house in violation of the ordinance that furnishes such a cause of action, if there be one. Any causal factor arising out of the action of the building inspector is too remote to be of consequence. Should it be contended that the building inspector breached the city ordinance by failing to see to it that the holder of the permit constructed his building as to location as by the ordinances provided,

still such failure could not be regarded as the proximate cause of the injury complained of.

The basis upon which liability is placed in cases of breach of statutes relating to licenses or permits is not in all cases the same. In some of the decided cases where such related issues have been determined, the so-called "legislative purpose" of the statute is regarded the important factor, while in others the issue is determined upon the basis of causation. In negligence cases it would seem that the issue of proximate cause, or causation, is fundamental in every case, whether the cause is bottomed upon the violation of a statute or ordinance or upon negligence aside from the breach of a statute, as in ordinary cases of negligence, or contributory negligence. Whether negligence or contributory negligence, or both, are involved, the ultimate analysis leads to the proximate, or to the sole proximate, cause, and this would seem to be so whether the case involves breach of statute as the basis of liability rather than defense, or whether the breach occurs on the part of the plaintiff or that of the defendant. Heretofore this court has said:

"It is wholly immaterial whether the defendant strictly complied with the law as to warnings and signals. Its failure in that regard, if there was a failure, which is very doubtful, had nothing whatever to do with the accident and was in no sense the proximate cause of plaintiff's injury." *Haarstrich* v. *Oregon S. L. R. Co.*, 70 Utah 552, 262 P. 100, 103. See, also, *Schmidt* v. *Chicago & N. W. Ry. Co.*, 191 Wis. 184, 210 N. W. 370; *Harvison* v. *Herrick* (S. D.) 248 N. W. 205; *Brown* v. *Shyne*, 242 N. Y. 176, 151 N. E. 197, 44 A. L. R. 1407.

In so far as a cause of action against the building inspector is concerned, we think sufficient has been said to show that in our opinion no cause of action is alleged against him.

This now brings us to the other defendants, the mayor and his surety. Apparently one of the grounds claimed as a basis for holding the mayor and his surety is that the building inspector is insolvent and unable, therefore to respond in damages. Another is that the mayor was negligent in not requiring the building inspector

to qualify by filing a bond, so that, if the building inspector should be negligent in any regard, it would not be necessary to call upon the mayor or his surety.

We confess we have searched diligently for some ground upon which a cause of action could be supported against the mayor. We have done so because we believe this action was brought and tried in good faith and was not intended as a mere matter of pleasantry. In our search we may have been led into some by and forbidden paths, we may have wandered into some irrelevant reveries. In that search, we may have constructed some theories, more or less irrelevant, by which plaintiff might in some way get over some imaginary bridges between the regions occupied by plaintiff and those other regions wherein the defendants abide. We have failed to find anything that would tend to support passage over the bridge "Hopeful." The positions of the mayor and his surety are so far removed that no act of the mayor can possibly be traced as a cause in any way related to the injury complained of.

The complaint, in our opinion, does not state a cause of action against any of the defendants. The defendants' demurrer should have been sustained and the motion for judgment non obstante veredicto should have been granted. It is therefore not necessary to further examine the matter. The judgment is reversed, and the cause remanded. Appellants to recover costs.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.